**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X       **Docket No.**
DEON GITTENS,

       Plaintiff,        **COMPLAINT**

   -*against*-

                *PLAINTIFF DEMANDS*
                 *A TRIAL BY JURY*
WINTHROP HOSPITALIST ASSOCIATES, P.C., NYU
WINTHROP HOSPITAL, NYU LANGONE HEALTH
SYSTEM, and DORIS MCKEON, *In Her Individual and Official*
*Capacities*,

        Defendants.
-------------------------------------------------------------------------X

   Plaintiff, DEON GITTENS, (hereinafter "Plaintiff"), by his attorneys, PHILLIPS &

ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information

and belief, as follows:

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to **42 U.S.C.** § 1981, and the **New York State Human Rights**

  **Law**, (NYS Executive Law § 296, *et seq*.) ("NYSHRL") and seeks damages to redress the

  injuries Plaintiff has suffered as a result of being **discriminated and retaliated against** by

  his employer solely due to his race (Black).

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331

  and 1343.

3.  The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

  law pursuant to 28 U.S.C. §1367.

4.  Venue is proper in this district in that a substantial part of the events or omissions giving

  rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C.

§ 1391(b).

## PROCEDURAL PREREQUISITES

5.      Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal

Employment Opportunities Commission ("EEOC") on October 25, 2018.

6.      Plaintiff received a Notice of Right to Sue from the EEOC, dated June 13, 2019, with

respect to the instant charges of discrimination.  A copy of the Notice is annexed to this

Complaint.

7.      This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8.      At all relevant times herein, Plaintiff was and is a resident of the State of New York and

Nassau County.

9.      At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to

protection as defined by state and federal laws.

10.     At all relevant times herein, Defendant NYU Winthrop Hospital, (hereinafter "NYU

WINTHROP"), is a domestic professional corporation that operates a healthcare facility in

Nassau county located at 259 First Street, Mineola, New York 11501.

4.      At all relevant times herein, Defendant NYU Langone Health System ("NYU

LANGONE") is a domestic not-for-profit corporation with a principal place of business

550 First Avenue, New York, New York 10016.

11.     At all relevant times herein, Defendant Winthrop Hospitalist Associates, P.C. (hereinafter

"WINTHROP HOSPITALIST"), is a domestic professional corporation that operates a

healthcare facility in Nassau county located at 259 First Street, Mineola, New York 11501.

12.     At all relevant times herein, Defendant Doris McKeon (hereinafter "MCKEON") was

Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant MCKEON

2

had the power to fire, demote, promote, and/or directly affect the terms and conditions of Plaintiff's employment, as well as the power to direct Plaintiff's daily work activities.

13. Defendant NYU WINTHROP, Defendant NYU LANGONE and Defendant WINTHROP HOSPITALIST are collectively referred to herein as "Defendant WINTHROP."

14. Defendant WINTHROP and Defendant MCKEON are collectively referred to herein as "Defendants."

15. At all times relevant herein, Plaintiff was an employee of Defendants.

## FACTUAL ALLEGATIONS

16. Plaintiff is currently employed with Defendants making an hourly rate of $37.09.

17. At all times, Plaintiff was an above satisfactory employee that performed his duties without any major performance issues. Plaintiff was well qualified for his position as a Radiologic Technologist.

18. At all times, Plaintiff was never disciplined for any work-related issues other than the situation alleged in this Complaint.

19. On November 7, 2005, Defendant WINTHROP employed Plaintiff as a Transporter.

20. In the Fall of 2007, Plaintiff attended Defendant WINTHROP'S School of Radiography to become a certified radiologic technologist.

21. While Plaintiff was attending school, he continued to work at Defendant WINTHROP as a Transporter.

22. In 2009, Plaintiff completed the requisite educational requirements to become a radiologic technologist.

23. Upon graduating from Defendant WINTHROP'S School of Radiography, Plaintiff applied for job positions in Defendant WINTHROP'S Radiology Department but was denied.

Instead Defendant WINTHROP offered job positions to two Caucasian males who had no affiliation with Defendant WINTHROP.

24. Plaintiff understood this to be the beginning of many years of discriminatory racial biases Defendant WINTHROP subjected Plaintiff to based solely on his race (African-American).

25. Plaintiff reasonably believed that Defendant WINTHROP was engaging in a systematic pattern of discrimination and complained directly to Defendant WINTHROP'S Human Resources department.

26. As a result, along with the help from Mr. Dennis Sheridan, Defendant WINTHROP'S Employee, Plaintiff was given an interview and was offered a position in Defendant WINTHROP'S Radiology Department as a *per diem* radiologic technologist.

27. In or around May 2010, Plaintiff took and passed the State Examination for Certification as a Radiologic Technologist.

28. On June 9, 2010, Plaintiff sent a letter to Defendant WINTHROP'S Human Resources Department informing them of his certification, license and capability for the Radiologic Technologist position within Defendant WINTHROP'S Radiology Department.

29. Upon receiving passing results, Plaintiff began reapplying for part-time/full-time job positions within Defendant WINTHROP'S Radiology Department.

30. However, Plaintiff was not offered any part/full time position. Defendant WINTHROP'S reasons were because a better qualified individual was given the job.

31. Defendant WINTHROP'S Human Resources Representative, Elaine Murtha, told Plaintiff to request a transfer.

32. Throughout 2010 – 2014, Plaintiff applied for a radiology technologist position in Defendant WINTHROP'S Radiology Department. Each time, Plaintiff was not given an offer.

33.  By this time, Plaintiff had five years of experience as a Radiologic Technologist and was more than qualified as a Radiologic Technologist.

34.  On or about September 11, 2014, Plaintiff applied for a part-time radiology technologist position in Defendant WINTHROP'S Radiology Department and was granted an interview.

35.  On or about October 1, 2014, Plaintiff was selected and offered a part-time radiologic technologist position in Defendant WINTHROP'S Ambulatory Surgery Center ("ASC") Department locate in Westbury, New York.

36.  Plaintiff was given a three-day work schedule working approximately thirty-five (35) to forty (40) hours per week.

37.  In this job position, Plaintiff was forced to perform job duties and tasks beyond his scope of his job title. For example, Plaintiff was told to mop the floor, take out the trash and clean the operating room after surgery. Other radiologic technologists, whom are Caucasian males, did not have to complete these out of title tasks.

38.  Plaintiff believed this disparate treatment to be racially discriminatory.

39.  In or around October 2016, Plaintiff applied for a full-time radiology technologist position at Defendant WINTHROP but was not offered the position.

40.  In or around December 2017, Plaintiff inquired about a full-time job position of a radiology technologist with Defendant WINTHROP. Plaintiff was prevented from applying.

41.  In or around January 2018, Plaintiff made a complaint to Defendant MCKEON about his pay being improperly docked for lunch breaks not taken. Other radiologic technologists (Caucasian) were paid correctly.

42.  On or about February 26, 2018, Plaintiff was told he was no longer needed that day and the work he was original assigned was reassigned to an outside *per diem* technician, a

Caucasian male. Plaintiff questioned Defendants' last-minute decision to reassign cases and was not given an explanation.

43.   Plaintiff believe this disparate treatment to be racially discriminatory based solely on his race.

44.   On and around March 2018, Plaintiff made a complaint to Rhoda Cavalcanti, Defendant WINTHROP'S Human Resources department representative, on the continuous and systematic racial discrimination faced by Plaintiff.

45.   No formal investigation or disciplinary action was taken by Defendant WINTHROP in response to Plaintiff's complaint.

46.   In or around June 2018, Plaintiff applied for a full-time radiology technologist position at Defendant WINTHROP. Plaintiff again was denied the full-time radiology technologist position. Instead, the job position was offered to Danielle Marini, a Caucasian female.

47.   Plaintiff complained to Defendant WINTHROP'S Human Resources department about yet again being denied a fulltime radiology technologist position and the position being offered to a Caucasian female.

48.   In or around October 2018, Defendant MCKEON transferred Plaintiff to work at the main hospital located in Mineola, New York. In addition, Plaintiff's usual work schedule of thirty-five (35) to forty (40) hours was reduced significantly to approximately fifteen (15) to twenty (20) hours per week.

49.   Plaintiff believe this disparate treatment is in retaliation for complaining of discrimination based solely on his race.

50.   Shortly thereafter, Plaintiff was admitted to the emergency room due to the stress of the hostile work environment and the racial discrimination caused by Defendant WINTHROP.

51.     On or about May 2019, Plaintiff applied for a full-time radiology technologist position at Defendant WINTHROP. Plaintiff was yet again not offered the position.

52.     Plaintiff continues to experience a hostile environment with Defendants as he is currently employed with Defendants.

53.     Plaintiff has been employed with Defendant WINTHROP for fourteen years.

54.     Plaintiff has applied and was denied for several different positions with Defendant WINTHROP on at least ten different occasions.

55.     Defendants had no good faith business justification for any of the actions (and/or failures/refusals to act) with regard to Plaintiff.

56.     The ongoing, continuous, and systematic hostile work environment faced daily by Plaintiff constitutes a continuing violation.

57.     As a direct result of the wrongful and oppressive actions of Defendants, Plaintiff was subjected to unlawful racially motivated discrimination and retaliation, subjected to a hostile work environment, humiliated, and he experienced a work environment permeated with ongoing and continuous embarrassment, discriminatory ridicule, and hostility.

58.     As a result of Defendants' actions, Plaintiff was extremely humiliated, stressed, angered, degraded, victimized, embarrassed, and emotionally distressed.

59.     As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience and loss of other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60.     Collective Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

61.    As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## AS A *FIRST* CAUSE OF ACTION
## FOR DISCRIMINATION UNDER *42 U.S.C.* § 1981 *(As Amended)*
### *(Against Defendant WINTHROP)*

62.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63.    42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

64.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (African-American).

65.    Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to his race.

## AS A *SECOND* CAUSE OF ACTION
## FOR RETALIATION UNDER *42 U.S.C.* §1981 *(As Amended)*
### *(Against Defendant WINTHROP)*

66.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67.    By the acts and practices described above, Defendant retaliated against Plaintiff for their

opposition to unlawful discrimination under 42 U.S.C. §1981.

68.   Defendant acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

69.   Plaintiff is entitled to the maximum amount of damages allowed under this statute.

**AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW**
(*Against Defendants*)

70.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71.   New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . race, disability . . . familial status … to discriminate against such          individual   in compensation or in terms, conditions or privileges of employment."

72.   While employed with Defendants, Plaintiff was subjected to differential and disparate treatment, verbal and mental abuse, hostile work environment by Defendants herein.

73.   Further, Defendants ignored and minimized Plaintiff's numerous complaints and requests for assistance and/or protection against the hostile environment he faced on a daily basis.

74.   As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

75.   Defendants conduct was malicious, willful and conducted with full knowledge of the law.

76.   Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION
UNDER NEW YORK STATE EXECUTIVE LAW**

*(Against Defendants)*

77.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

79.    Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

80.    Following Plaintiff's complaints, Plaintiff was subjected to a hostile environment permeated with discriminatory ridicule, comments, insults, adverse employment actions, and other retaliatory behavior.

81.    As a result of Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

82.    As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

83.    Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

84.    Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY***

*(As and Against Individual Defendant)*

85.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

86.  New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

87.  Individual Defendant MCKEON engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct against Plaintiff.

88.  As a result of their actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

89.  As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

90.  Individual Defendant MCKEON conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

91.  Plaintiff is entitled to the maximum amount allowed under this statute/law.

## PUNITIVE DAMAGES

92.  Defendants conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

93.  As such, punitive damages are appropriate as a result of Defendants' above-described conduct and Plaintiff demands Punitive Damages as against all Defendants.

## JURY DEMAND

94.　　Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.　　Declaring that Defendants engaged in unlawful employment practices prohibited by Section 1981 and NYSHRL in that Defendants discriminated against Plaintiff on the basis of his race and retaliated against Plaintiff by subjecting Plaintiff to a hostile work environment for engaging in protected activity;

B.　　Awarding damages to Plaintiff for all damages resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.　　Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.　　Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

E.　　Awarding Plaintiff punitive damages;

F.　　Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.　　Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
　　　　September 5, 2019

　　　　　　　　　　　　　　　　　　　　**PHILLIPS & ASSOCIATES,**
　　　　　　　　　　　　　　　　　　　　**ATTORNEYS AT LAW, PLLC**

　　　　　　　　　　　　**By:**　　/s/ Marjorie Mesidor
　　　　　　　　　　　　　　　　　　Marjorie Mesidor, *Esq.*
　　　　　　　　　　　　　　　　　　Irene Chan, *Esq.*
　　　　　　　　　　　　　　　　　　**Phillips & Associates, PLLC**

*Attorneys for Plaintiffs*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
mmesidor@tpglaws.com
ichan@tpglaws.com