UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEON GITTENS,

                                    Plaintiff,

                    v.

WINTHROP HOSPITALIST ASSOCIATES, P.C.,
NYU WINTHROP HOSPITAL, NYU LANGONE
HEALTH SYSTEM, and DORIS MCKEON, In
Her Individual and Official Capacities,

                                    Defendants.

---

**MEMORANDUM AND ORDER**

19-CV-5070 (LDH) (LB)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Deon Gittens ("Plaintiff") brings the instant action against Winthrop Hospitalist

Associates, P.C., NYU Winthrop Hospital, NYU Langone Health System (collectively

"Winthrop"), and Doris McKeon ("Mckeon," and together with Winthrop, "Defendants")

alleging claims for discrimination, hostile work environment, and retaliation in violation of 42

U.S.C. § 1981 and New York State Human Rights Law ("NYSHRL").  Defendants move

pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the second amended complaint in

its entirety.

## BACKGROUND[1]

Plaintiff is African American.  (*See* Second Am. Compl. ("Compl.") ¶¶ 23–24, ECF No.

18.)  On November 7, 2005, Plaintiff was hired by Winthrop as a transporter, and thereafter,

reported to Doris McKeon.  (*Id.* ¶¶ 9, 18.)  From Fall 2007, through some time in 2009, Plaintiff

---

[1]  The following facts are taken from the second amended complaint and are assumed to be true for the purposes of
this memorandum and order.

attended Winthrop's School of Radiography where he trained to become a radiologic technologist.  (*Id*. ¶¶ 19, 21.)  Plaintiff completed his studies in 2009.  (*Id*. ¶ 21.)

Upon graduating from the school of radiography, Plaintiff applied for positions in Winthrop's radiology department.  (*Id*. ¶ 22.)  Winthrop did not extend Plaintiff a job in the radiology department but instead hired two white males who had no affiliation with Winthrop. (*Id*.)  As a result of what Plaintiff perceived to be a pattern of discrimination, Plaintiff complained to Winthrop's human resources department that he was not hired in the radiology department because of his race.  (*Id*. ¶ 24.)  Subsequently, Plaintiff was interviewed and hired to work as a "per diem" radiologic technologist.  (*Id*. ¶ 25.)

In or around May 2010, Plaintiff passed New York's examination and became a certified radiologic technologist.  (*Id*. ¶ 26.)  Plaintiff informed Winthrop's human resources department of his certification on June 9, 2010.  (*Id*. ¶ 27.)  At this time, and on different occasions through 2014, Plaintiff applied for positions, both full-time and part-time, in Winthrop's radiology department.  (*Id*. ¶¶ 28, 30.)  Each time Plaintiff applied, Winthrop hired non-Black employees to fill the vacancies, because according to Winthrop these other candidates were more qualified than Plaintiff.  (*Id*. ¶¶ 29, 30.)  By 2014, Plaintiff had five years of relevant experience.  (*Id*. ¶ 33.)

On or about September 11, 2014, Plaintiff applied to work as a part-time radiologic technologist in Winthrop's Ambulatory Surgery Center, a position for which he was subsequently hired on October 1, 2014.  (*Id*. ¶¶ 34–35.)[2]  As a part-time radiologic technologist, Plaintiff was given a three-day work schedule consisting of 30–40 hours per week.  (*Id*. ¶ 36.) From 2014, to 2017, Plaintiff was required to perform tasks beyond the scope of his formal

---

[2]  Throughout the second amended complaint, Plaintiff uses the titles "radiology technologist" and "radiologic technologist" interchangeably.  (*See* Compl. ¶¶ 34–35.)

duties such as mopping the floor, taking out the trash, and cleaning the operating room after surgery. (*Id.* ¶ 37.) Other radiologic technologists, who were white, did not have to perform such tasks. (*Id.*) In or around October 2016, Plaintiff applied for a position as a full-time radiology technologist. (*Id.* ¶ 38.) By this time, Plaintiff had been certified as a radiologic technologist for six years. (*Id.*) Plaintiff was not offered the position. (*Id.*)

By December 2017, Plaintiff was "fed up" and "directly complained" of a "racially hostile work environment." (*Id.* ¶ 39.) Plaintiff does not allege to whom he complained. In any event, after Plaintiff complained, in or around December 2017, he was "prevented" from applying for a full-time radiologic technologist position. (*Id.* ¶ 41.) Then, in or around January 2018, Plaintiff complained to Defendant McKeon that his pay had been improperly docked for lunch breaks he had not taken. (*Id.* ¶ 42.) According to the second amended complaint, other radiologic technologists who were white were paid correctly. (*Id.*) On or about February 26, 2018, Plaintiff's work schedule for that day was reassigned to an outside per diem technician, a white male. (*Id.* ¶ 43.) On and around March 2018, Plaintiff complained to Winthrop's human resources department about a "retaliatory hostile work environment." (*Id.* ¶ 44.) Approximately three months later, in June 2018, Plaintiff again applied to be a full-time radiology technologist with Winthrop. (*Id.* ¶ 46.) The job was offered to a white woman. (*Id.*)

Plaintiff filed a charge of discrimination with Nassau County's Human Rights Commission "in or around October 2018." (*Id.* ¶ 49.) "In or around October 2018," Winthrop transferred Plaintiff to its main hospital where his regular schedule was reduced to 15–20 hours per week. (*Id.* ¶ 50.) In or about May 2019, Plaintiff applied for yet another full-time radiology technologist position with Winthrop but was again denied an offer. (*Id.* ¶ 55.) Over the course

of fourteen years with Winthrop, Plaintiff applied for and was denied positions on at least ten separate occasions. (*Id.* ¶¶ 57–58.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of defendants' liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

### I.   Timeliness of Plaintiff's Section 1981 Claims

The statute of limitations governing claims brought pursuant to Section 1981 is four years. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004) (concluding that cause of action under § 1981 is governed by § 1658's four-year statute of limitations). Defendants argue that Plaintiff's claim of discrimination is founded, in part, on conduct that is time-barred. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") 4–6, ECF No. 28.) Defendants are correct.

Plaintiff commenced the instant action on September 5, 2019. (*See* ECF No. 1.) Thus to be timely, the conduct at issue must have occurred no earlier than September 5, 2015. As

4

pleaded, Plaintiff's discrimination claim rests, in part, on allegations concerning Winthrop's failure to hire or promote Plaintiff on multiple occasions between 2010 and 2014.  (*See* Compl. ¶ 32.)  Because that conduct falls outside the limitations period, it is time-barred.  In other words, to the extent Plaintiff's § 1981 discrimination claim is premised upon Winthrop's alleged refusal to hire or promote Plaintiff prior to September 5, 2015, the claim is dismissed as untimely.  *See, e.g.*, *Russell v. Cty. of Nassau*, 696 F. Supp. 2d 213, 230 (E.D.N.Y. 2010) (finding § 1981 discriminations claims arising four years prior to filing the complaint were time-barred).

Plaintiff's attempt to save his claim from dismissal by invoking the continuing violation doctrine is unpersuasive.  (*See* Pl.'s Mem. L. Opp'n Mot. Dismiss ("Pl.'s Mem.") 5–9, ECF No. 29.)  The time-barred conduct—Winthrop's repeated failure to hire or promote Plaintiff between 2010 and 2014—can be properly characterized as discrete discriminatory acts, such that the continuing violation doctrine does not apply.  *See Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010) ("Termination, failure to promote, and refusal to hire are considered 'discrete acts' which are 'easy to identify[.]'"); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002) (rejecting argument that the continuing violation doctrine applies to discrete acts of discrimination or retaliation); *Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (finding Title VII's continuing violations doctrine did not apply to § 1981 and § 1983 discrimination claims).  And, as Defendants correctly note, each discriminatory act starts a new clock for the filing of a claim arising therefrom.  (*See* Defs.' Mem. 5 (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113).)  Indeed, "[r]ecovery for discrete acts of discrimination that occur outside of the applicable limitations period is precluded, even if the acts are related to acts alleged in timely filed charges." *Lukasiewicz–Kruk v. Greenpoint YMCA*, 404 F. App'x 519, 520 (2d Cir. 2010).  This is not to say, as Plaintiff argues (Pl.'s Mem. at 5–6), that conduct outside

the limitations period may not be relevant or admissible as "background evidence" for timely claims. *See, e.g.*, *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012) (holding that district court properly admitted background evidence predating the onset of the limitations period and that there was sufficient evidence for a reasonable juror to conclude that the defendant discriminated against plaintiffs within the limitations period); *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *10 (E.D.N.Y. Sept. 21, 2015) (collecting cases and applying on motion to dismiss), *aff'd*, 652 F. App'x 44 (2d Cir. 2016).  In any event, discrete acts occurring outside the statute of limitations cannot revive Plaintiff's untimely claims.

II.     **Timeliness of Plaintiff's NYSHRL Claims**

"[C]laims under the NYSHRL . . . are time-barred unless filed within three years of the alleged discriminatory acts . . . ." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing, *inter alia*, N.Y.C.P.L.R. § 214(2)).  Moreover, courts in this circuit have determined that the statute of limitations applicable to claims under NYSHRL is "tolled during the period in which a complaint is filed with the EEOC."  *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (collecting cases).  Defendants argue that Plaintiff's claim based on alleged acts occurring prior to January 17, 2016, is time-barred.  (Defs.' Mem. at 7.) The Court agrees.

According to the second amended complaint, Plaintiff filed a charge of discrimination with Nassau County's Human Rights Commission in or around October 2018.  (Compl. ¶ 49.) When a work-sharing agreement is in place, charges that are timely filed with the state agency are "automatically dual-filed" with the EEOC and vice versa.  *See Hanley v. Chicago Title Ins. Co.*, No. 12-CV-4418, 2013 WL 3192174, at *7 (S.D.N.Y. June 24, 2013) (recognizing same).

Plaintiff received a right to sue letter from the EEOC on June 13, 2019—231 days after the

EEOC received his charge.[3]  (*See* Ltr. dated Sept. 10, 2019, Ex. A, ECF No. 6-1.)  Accordingly,

Plaintiff's NYSHRL discrimination claim based on alleged acts occurring prior to January 17,

2016—three years and 231 days before Plaintiff commenced the instant action—is dismissed as

untimely.[4]

## III.   Plaintiff's Actionable Section 1981 and NYSHRL Discrimination Claims

Pursuant to 42 U.S.C. § 1981 "[a]ll persons . . . shall have the same right . . . to make and

enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  Thus,

Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges,

terms, and conditions of a contractual relationship, such as employment."  *Patterson v. Cty. of*

*Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  To plead a prima facie case of discrimination, a

plaintiff must allege: (1) plaintiff's membership in a protected class; (2) plaintiff's qualification

for a particular position of employment; (3) an adverse employment action by the employer; and

(4) minimal evidence suggesting an inference that the employer acted with discriminatory

motivation.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (outlining

prima facie case of employment discrimination).

In assessing whether a plaintiff has successfully pleaded a claim under Section 1981 and

NYSHRL, courts employ the same standards used to assess Title VII claims.  *See Littlejohn*, 795

---

[3] Defendants assert in their memorandum of law that Plaintiff filed his discrimination charge on October 25, 2018. (Defs.' Mem. at 7.)  Plaintiff does not allege the date his discrimination charge was filed, only that it was filed "[i]n or around October 2018."  (Compl. ¶ 49.)  Even if the Court were to assume that Plaintiff filed his discrimination charge on October 1, 2018, the difference does not alter the analysis here.

[4] Here again, Plaintiff argues that the continuing violation doctrine saves his claim from dismissal.  (*See* Pl.'s Mem. at 9.)  For the same reasons stated above with respect to Plaintiff's Section 1981 claim, the Court is unpersuaded that the continuing violation doctrine saves Plaintiff's NYSHRL claim.

F.3d at 312 (analyzing § 1981 claim "pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework"); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404, n.4. (S.D.N.Y. 2014) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("[C]laims brought under [NYSHRL] are analytically identical to claims brought under Title VII.")).  Under this standard, the complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss.  *Alleyne v. NAACP Legal Defense and Educ. Fund, Inc.*, No. 14-cv-6675, 2015 WL 6869731, at *2 (E.D.N.Y. Nov. 6, 2015) (collecting cases).  Instead, a plaintiff need only plead facts that give plausible support to his claim.  *Id.*  Accordingly, at the pleading stage, a plaintiff alleging employment discrimination must allege that an employer took an adverse action against him at least in part for a discriminatory reason.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citing *Littlejohn*, 795 F.3d at 310).  A plaintiff may do so either directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging circumstances that give rise to a plausible inference of discrimination.  *Id.*  Defendants do not dispute that Plaintiff belongs to a protected class, but rather argue that Plaintiff has failed to set forth any facts establishing a causal connection between any alleged adverse action and racially discriminatory animus.  (Defs.' Mem. at 14–16.)  Put plainly, they maintain that Plaintiff has failed to plead any facts sufficient to allow a plausible inference of race discrimination.  (*See id.*) The Court agrees, but only in part.

Defendants devote much of their argument to Plaintiff's claims concerning discrimination in its failure to hire Plaintiff to a fulltime position.  (*See id.*)  According to Defendants, "other than alleging that certain positions were given to others who were not [B]lack, his complaint is completely devoid of any factual evidence that race played any role whatsoever in his

employment at [Winthrop]." [5] (*Id*. at 15.)  Defendants' argument reveals their misapprehension
of the law.  As the Second Circuit has long advised, "[t]he fact that a plaintiff was replaced by
someone outside the protected class will ordinarily suffice for the required inference of
discrimination at the initial prima facie stage . . . including at the pleading stage." *Littlejohn*, 795
F.3d at 297 (citation omitted).  Here, Plaintiff alleges that in June 2018, he applied for a
radiology technologist position—a position for which he was qualified—that was given to a
white woman.  (Compl. ¶ 46.)  These allegations, coupled with Defendants alleged history of
preferring white candidates over Plaintiff from 2010 to 2014, are sufficient to meet Plaintiff's
minimal burden.  (*See id*. ¶¶ 30, 32.)  The same cannot be said, however, of Plaintiff's
allegations concerning Defendants' failure to hire him in October 2016 and May 2019.  (*See id*.
¶¶ 38, 55.)  As to those allegations, Plaintiff offers no facts from which the Court might conclude
that his failure to be hired was motivated by discrimination.  Most glaringly, Plaintiff does not
even allege that on those occasions Defendants hired someone outside of his protected class.

Next, Defendants challenge the sufficiency of Plaintiff's allegations concerning the
menial tasks he was required to perform, Plaintiff's docked pay during lunch breaks, and single-
day work reassignment.  (Defs.' Mem. at 15–16.)  As Defendants' argument goes, these
allegations are insufficient because Plaintiff has not alleged that he is similarly situated to his
white counterparts whom Plaintiff alleges were treated differently.  (*Id*. at 16.)  The Court agrees,
except with respect to Plaintiff's allegations that he was required to perform menial tasks.

Certainly, to raise an inference of discrimination by reference to comparators outside his
protected class, a plaintiff must sufficiently allege facts that allow the inference that he "was

---

[5]  The Court takes this opportunity to remind Defendants that at the pleading stage a Plaintiff need not adduce
"evidence" to support his claim.  Rather, the allegations alone, if sufficient, are all that is necessary to defeat a
motion to dismiss.

similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted).  The Second Circuit has advised that what constitutes "in all material respects" varies from case to case, but judgment rests on whether the plaintiff and his comparators were "subject to the same workplace standards" such as "the standards governing performance evaluations and discipline." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).  In other words, the plaintiff and comparators must bear a "reasonably close resemblance," but need not be "identical." *Id.*

Plaintiff's allegations of single-day reassignment and docked pay, even assuming these incidents constitute adverse employment actions[6]—a point neither side specifically addressed— are insufficient to raise an inference of discrimination.  Plaintiff alleges that his daily work assignment on or around February 26, 2018, was reassigned to a Caucasian "outside *per diem* technician . . . ." (Compl. ¶ 43.)  But Plaintiff fails to allege any facts that comparators outside of his protected class were not subject the same reassignment on occasion.  Additionally, Plaintiff alleges that he "made a complaint . . . about his pay being improperly docked for lunch breaks not taken[,]" and that "[o]ther radiologic technologists (Caucasian) were paid correctly."  (*Id.* at ¶ 42.)  These allegations fail to provide any detail with respect to whether Plaintiff's comparators were similarly situated in all material respects.  Specifically, there are no allegations as to whether these comparators were full-time or part-time employees, or whether they were paid by salary or hourly.  Thus, Plaintiff's allegations are insufficient to allow the Court to determine if

---

[6] Of note, Plaintiff does not allege that his complaint of docked pay went unresolved, only that the complaint was lodged.  For this reason, the Court would likely deem the allegation insufficient to plead an adverse employment action.  *See, e.g.*, *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (adverse action that is subsequently rescinded may not be actionable) (collecting cases).  Similarly, Plaintiff does not explain how a single day work re-assignment altered the conditions of his employment.

these comparator's "lunch breaks" were subject to the same pay structure as Plaintiff.  At bottom, the Court cannot glean from the allegations of re-assignment and docked pay whether Plaintiff's white counterparts were treated differently.  Such bare allegations fail to give rise to an inference of discrimination.

Conversely, with respect to allegations concerning menial duties, Plaintiff's alleged comparators are sufficiently similar in all material respects.  That is, Plaintiff did not compare himself to doctors, nurses, or other categories of employees at Winthrop.  Instead, his comparators were also radiologic technologists, a position that required both education and state certification and licensing.  Presumably, the radiologic technologists hired by Winthrop possess the same requisite skills and qualifications for the position as Plaintiff.  Indeed, the position is one which calls for state certification requiring clinical training and classroom instruction, with courses in anatomy and physiology, patient care procedures, radiation physics, radiation protection, principles of imaging, medical terminology, positioning of patients, medical ethics, radiobiology, and pathology.  *See Radiologic Technologists and Technicians, New York Licensure Requirements*, NEW YORK HEALTH CAREERS, https://www.healthcareersinfo.net/radiologic-technologists-technicians/#:~:text=To%20be%20licensed%20in%20New,www.arrt.org (last visited Feb. 3, 2022).[7]  Any critical difference among those working in the field is likely one of work experience and seniority.  It is difficult to imagine that the presence of more senior technicians in the workplace could, under any circumstance, relegate the most junior technician to performing

---

[7] The court takes judicial notice of the State of New York's license requirements.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (taking judicial notice of "documents filed with governmental entities and available on their official websites").  Though a court considering a Rule 12(b)(6) motion ordinarily may not look outside the pleadings, the court "may take judicial notice of certain matters of public record without converting the motion into one for summary judgment."  *Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260, 267, n.3 (E.D.N.Y. 2019) (quoting *Wells Fargo Bank, N.A.*, 127 F. Supp. 3d at 166).

janitorial duties like mopping the floor.  Given the nature of the allegations—that Plaintiff was

asked to mop the floor, take out the trash, and clean the operating room after surgery where other

radiologic technologists were not—the Court is satisfied that the comparators are similarly

situated and that an inference of discrimination can be drawn.  *See Brown*, 756 F.3d at 230

(rejecting the defendant's argument that the plaintiff was required to specifically allege

comparator-employees had the same job function, experience, qualifications, and rate of pay and

finding that it was reasonable to conclude when drawing all reasonable inferences in plaintiff's

favor that employees were subject to the same performance evaluation and disciplinary

standards, and therefore similarly situated, based on allegations that the employees worked in the

same group).

## IV.    Plaintiff's Actionable Section 1981 and NYSHRL Hostile Work Environment Claims

A hostile work environment is a workplace that is "permeated with discriminatory

intimidation, ridicule, and insult[.]"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal

citations omitted).  Courts analyze hostile work environment claims under § 1981 and NYSHRL

using the same standards as for claims under Title VII.  *See Love v. Premier Util. Servs., LLC*,

186 F. Supp. 3d 248, 256 (E.D.N.Y. 2016) (collecting cases).  To state a claim, a plaintiff must

plead facts that would tend to show that the complained-of conduct: "(1) is objectively severe or

pervasive—that is, . . . creates an environment that a reasonable person would find hostile or

abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive;

and (3) creates such an environment because of the plaintiff's [race]."  *Patane v. Clark*, 508 F.3d

106, 113 (2d Cir. 2007) (quotation marks omitted).  Whether a work environment is sufficiently

severe or pervasive is determined by considering the totality of the circumstances, including "the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  To survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that [he] was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.'" *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal emphasis omitted)).  Defendants argue that Plaintiff fails to allege severe or pervasive conduct or conduct demonstrating racial animus toward Plaintiff.  (*See* Defs.' Mem. at 10–12.)  The Court agrees, but here again, only in part.

Plaintiff alleges, among other things, that his applications for positions in the radiology department were repeatedly denied; that his work was reassigned for a single day; that he complained that his pay was improperly docked for lunch breaks he did not take; and that he was involuntarily transferred to Winthrop's main hospital with reduced work hours.  (Pl.'s Mem. at 10 (citing Compl. ¶¶ 28–55).)  Each of these events, as alleged, constitute discrete acts that do not form the basis of a hostile work environment claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify . . . and differ in kind from [hostile work environment claims]").  The unlawful employment practice that gives rise to hostile work environment claims "cannot be said to occur on any particular day[.]"  *Id*. at 115.  Here, the above allegations occurred on isolated occasions sometimes years apart from one another.  At bottom, these allegations cannot reasonably be characterized as "repeated and pervasive conduct" that support a hostile work environment claim.  *Guy v. MTA New York City Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. 2016)(" Although Plaintiff refers repeatedly to his demotion, suspension, and Defendant's failure to promote him, such actions are discrete

13

discriminatory acts rather than repeated and pervasive conduct."); *see also Thomson v. Odyssey House*, 14-cv-3857, 2015 WL 5561209, at *10 (E.D.N.Y. Sept. 21, 2015) (concluding that plaintiff's termination was a discrete act that could not support a hostile work environment claim).  Plaintiff's hostile work environment claim premised on these allegations must fail.

That said, Plaintiff's allegations that he was required to perform menial tasks outside of his employment role are sufficient to state a claim for hostile work environment.  Indeed, courts in this district have now long found that a hostile work environment may exist where a plaintiff was inappropriately assigned menial tasks.  *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 237 (E.D.N.Y. 2014) (recognizing same and citing *Rodriguez v. City of New York*, 644 F.Supp.2d 168, 191 (E.D.N.Y. 2008)).  This Court found the same in *Watson v. Richmond University Medical Center*.  *See* 408 F. Supp. 3d 249, 267 (E.D.N.Y. 2019) (finding the assignment to menial tasks such as taking out the garbage, despite the plaintiff's qualifications, could support a hostile work environment claim).  The Court has already determined that the Plaintiff's comparators—other radiologic technologists—are sufficiently situated to Plaintiff with respect to allegations of menial tasks.  The only other question then is whether the conduct as alleged is sufficiently severe or pervasive.  Let there be no doubt, the Court finds that it is.  As the Court stated in *Watson*, "[b]eing made to perform janitorial services and denied recognition for an earned medical degree could be deemed as constantly humiliating as not returning a salute."  *Id.*  The same reasoning applies here.

## V.    Plaintiff's Section 1981 and NYSHRL Retaliation Claims

To establish a presumption of retaliation at the pleading stage under Section 1981 and the NYSHRL, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection

between the protected activity and the adverse employment action." *See Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Courts analyze retaliation claims under § 1981 and NYSHRL using the same standards as claims Title VII. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (applying same standard to NYSHRL claims); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 586 (S.D.N.Y. 2011) (collecting cases) ("Retaliation claims under [Title VII] are treated similarly to retaliation claims under Section 1981."). To adequately plead causation, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action . . . . 'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90–91 (internal quotation marks, alterations, and citations omitted). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan v. City of New York.*, 888 F.3d 612, 625 (2d Cir. 2018). Defendants argue that Plaintiff fails to allege that he suffered an adverse employment action, let alone one that is causally connected to his engagement in a protected activity. (Defs.' Mem. at 17.) The Court agrees in part.

Plaintiff first alleges that in December 2017 he "directly complained that the disparate treatment created a racially hostile work environment." (Compl. ¶ 39.) However, Plaintiff does not allege to whom he complained, and it is unclear whether Defendants were aware of his complaint. Thus, this allegation is insufficient to serve as a protected activity. *See Castro v. City of New York*, 24 F. Supp. 3d 250, 270 (E.D.N.Y. 2014) ("Ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." (quoting *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d

245, 257 (S.D.N.Y 2007)); *see also Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d

215, 228–29 (E.D.N.Y. 2016) (finding allegations "lacking in any supporting factual detail" are

"insufficient to satisfy [plaintiff's] pleading burden") (collecting cases).  Next, Plaintiff alleges

that he complained to Defendant McKeon in or around January 2018 regarding his pay being

improperly docked.  (Compl. ¶ 42.)  But Plaintiff does not allege an adverse employment action

resulting from this complaint.  Rather, Plaintiff alleges that, one month later, a single day of his

work assignment was reassigned to an outside technician.  (*Id.* ¶ 43.)  Such conduct is not

enough to meet the definitional requirement of adverse employment action.  That is, the conduct

would not "dissuade a reasonable worker from making or supporting a charge of discrimination."

*Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57

(2006)).

Plaintiff does allege that he made a complaint in March 2018 to Winthrop's human

resources department regarding "the retaliatory hostile work environment [he] was subjected to."

(Compl. ¶ 44.)  Then, around June 2018, Plaintiff was denied a full-time radiology technologist

position.  (*Id.* ¶ 46.)  Given the timing of these events, separated by only three months,

Defendants' June 2018 failure to hire Plaintiff following his March 2018 complaint is sufficient

to draw an inference of retaliation.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110

(2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a

prima facie case, the outer limits beyond which a temporal relationship is too attenuated to

establish causation, we have previously held that five months is not too long to find the causal

relationship.").  Accordingly, Plaintiff's retaliation claim survives with respect to these

allegations.

Further, Plaintiff alleges that he filed a charge of discrimination with Nassau County's Human Rights Commission in or around October 2018.  (Pl.'s Mem. at 15; Compl. ¶ 49.) Defendants rightly concede that filing a discrimination charge is a protected activity.  (*See* Defs.' Mem. at 19.)  According to Plaintiff, in or around October 2018, he was transferred to Winthrop's main hospital, and his work schedule was subsequently reduced to 15–20 hours per week. (Compl. ¶ 50.)  Contrary to Defendants' assertion, when a transfer results in reduced work hours, (and therefore, reduced pay, as Plaintiff notes), the transfer can be deemed an adverse employment action.  *See, e.g., Raymond v. City of New York*, 317 F. Supp. 3d 746, 783 (S.D.N.Y. 2018) (finding that allegations of plaintiff's transfer from his midnight tour to the day tour, resulting in a difference in pay, support an inference that he experienced a "reduction in pay" and therefore an adverse employment action).  That is what is alleged to have happened here.  Nonetheless, as Defendants assert, Plaintiff's failure to allege that, at the time he was transferred, Defendants were aware that he previously filed a charge of discrimination operates to defeat his claim.  (*See* Def.'s Mem. at 19.)

In opposition, Plaintiff does not direct the Court to any allegations that might support the inference that Defendants were aware of the charge at the time of his transfer.  Instead, Plaintiff counters that, as a general matter, it is the EEOC's practice to forward a copy of any charge to the respondent and refers the Court to the Commissions website.  (Pl.'s Mem. at 16 (citing Nassau County Human Rights Commission, Complaint Process, Formal Investigative Procedures, available at https://www.nassaucountyny.gov/415/Complaint-Process (last visited February 8, 2022)).).  Presumably, Plaintiff asks the Court to take judicial notice of the Commission's practice and to infer that Defendants had knowledge that he filed a complaint. Even if the Court chose to take notice, the existence of this practice alone does not allow an

inference that Defendants in this case were made aware of Plaintiff's charge. Plaintiff alleges that he filed a charge of discrimination "in or around October 2018." (Compl. ¶ 49.) Likewise, he alleges that the transfer occurred "in or around October 2018." (*Id*. ¶ 50.) The Court has no way to discern which came first. And, even if Plaintiff had provided some clarity by alleging that the transfer occurred after the charge was made but nonetheless in the month of October, the existence of the Commissioner's practice to provide a copy of the charges to respondent does not necessarily lend to the inference that Defendants would have received a copy of the charge in the same month. Accordingly, Plaintiff fails to establish an inference of retaliation based on his October 2018 charge of discrimination.

**VI.     Plaintiff's NYSHRL Aiding and Abetting Claim**

NYSHRL § 296(6) provides that it shall be an unlawful "[f]or any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). Plaintiff seeks to hold McKeon liable under § 296(6). (*See* Compl. ¶ 93.) To prevail under the statute, courts impose "a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015) (quoting *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999)) (collecting cases). Indeed, courts have dismissed claims for aiding and abetting where the underlying claim against the principal was dismissed. *See, e.g.*, *Caputo v. Copiague Union Free Sch. Dist.*, 218 F. Supp. 3d 186, 192 (E.D.N.Y. 2016) ("[A]s the discrimination and retaliation claims under the NYSHRL against the District fail, so too must any aider and abettor claims against Leunig."). Defendants argue that Plaintiff's claim against McKeon fails entirely because Plaintiff has not adequately pleaded a violation of NYSHRL against Winthrop. (*See* Defs.' Mem. at 21.) The Court agrees.

18

Here, the only surviving claims under the NYSHRL are for discrimination and hostile work environment based on the allegations that Plaintiff was made to perform menial tasks and, with respect to discrimination and retaliation, Winthrop's refusal to hire Plaintiff in June 2018. However, Plaintiff fails to make nonconclusory allegations that McKeon played any role in the alleged misconduct whatsoever.  Indeed, the only nonconclusory allegation as to McKeon is that Plaintiff reported to her.  (Compl. ¶ 9.)  Courts in this circuit have held that "'[w]here the plaintiff fails to plead any facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme' the defendant may not be held liable under the NYSHRL."  *Aiola* v. *Malverne Union Free Sch. Dist.*, 115 F. Supp. 3d 321, 337 (E.D.N.Y. 2015) (quoting *Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F. Supp. 2d 376, 381 (S.D.N.Y.1999)).  Plaintiff seeks to avoid this holding by arguing, without support, that "Defendant McKeon, was responsible for the hostile work environment" simply by virtue of being his employer.  (Pl.'s Mem. at 17.)  Plaintiff's opposition is woefully underwhelming.  The claim against McKeon is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the second amended complaint for failure to state a claim is GRANTED in part and DENIED in part.  Plaintiff's Section 1981 discrimination claim premised upon Defendant Winthrop's alleged refusal to hire or promote Plaintiff prior to September 5, 2015, is dismissed.  Plaintiff's NYSHRL discrimination claim premised on alleged acts occurring prior to January 17, 2016, is dismissed.  Plaintiff's Section 1981 and NYSHRL claims for discrimination, retaliation, and hostile work environment are dismissed except to the extent based on the allegation that Plaintiff was made to perform menial tasks and, with respect to discrimination and retaliation, Winthrop's refusal to hire Plaintiff in

June 2018.  Those claims survive.  Plaintiff's NYSHRL claim against Defendant McKeon for aiding and abetting is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      February 18, 2022

/s/ LDH
LASHANN DEARCY HALL
United States District Judge