UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEON GITTENS,

                              Plaintiff,

                    v.

WINTHROP HOSPITALIST ASSOCIATES, P.C.,
NYU WINTHROP HOSPITAL, NYU LANGONE
HEALTH SYSTEM, and DORIS MCKEON,

                              Defendants.

---

**MEMORANDUM AND ORDER**
19-CV-5070 (LDH)(PK)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Deon Gittens ("Plaintiff") brings this instant action against Winthrop Hospitalist Associates, P.C., NYU Winthrop Hospital, NYU Langone Health System, and Doris McKeon in her individual and official capacities (collectively "Defendants"), alleging discrimination and retaliation in violation of 42 U.S.C. § 1981, discrimination in violation of New York State Executive Law ("NYSHRL") § 296(1); retaliation in violation of NYSHRL § 296(7); and aiding and abetting discrimination in violation of NYSHRL § 296(6).[1] Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Plaintiff's claims.

**UNDISPUTED FACTS**[2]

      On or around November 7, 2005, NYU hired Plaintiff, an African American male, as a transporter. (Defs.' Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1"),

---

[1] The Court's February 18, 2022 Memorandum and Order granted, in part, and denied, in part, Defendants' motion to dismiss. Accordingly, only Plaintiff's Section 1981 and NYSHRL claims for discrimination, retaliation, and hostile work environment remain "to the extent based on the allegation that Plaintiff was made to perform menial tasks, and with respect to discrimination and retaliation, Winthrop's refusal to hire Plaintiff in June 2018." (February 18, 2022 Memorandum and Order at 19, ECF No. 46.)
[2] The foregoing facts are undisputed unless otherwise noted. Further, facts that were not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If

1

ECF No. 70 ¶¶ 2–3.) In 2007, Plaintiff began radiologic technologist ("x-ray tech") training at NYU's School of Radiography. (*Id*. ¶¶ 4–5; Pl.'s Counter Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Pl.'s 56.1") ¶¶ 2–3, ECF No. 74.) During this time, Plaintiff continued working for NYU as a transporter. (*Id.* ¶ 3.) Plaintiff completed x-ray tech training in 2009, but Plaintiff failed to pass his licensing exam until May 2010. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 12.)

Following Plaintiff's graduation from NYU's School of Radiography in 2009, Plaintiff applied for x-ray tech positions in NYU's radiology department. (Pl.'s 56.1 ¶ 5.) The parties dispute whether Plaintiff was denied a position. According to Plaintiff, he was denied every position he applied for until he complained to human resources and consulted with Defendant's employee, Dennis Sheridan, who "made a call on Plaintiff's behalf." (Pl.'s 56.1 ¶¶ 6, 9–10.) Defendants contend that NYU offered Plaintiff a position as a per diem x-ray tech, but only upon receiving his license in May 2010. (Defs.' 56.1 ¶ 7.) In the interim, according to Defendant, Plaintiff resumed his position as a full-time transporter. (Defs.' 56.1 ¶ 7–8.)

On October 1, 2014, Plaintiff was hired as a part-time x-ray tech at the Ambulatory Service Center at NYU Winthrop. (Defs.' 56.1 ¶ 10.) He began working in this position on November 2, 2014. (*Id.* ¶ 10–11.) In this role, Plaintiff worked primarily with Dr. Edward Rubin who performed pain management procedures, such as epidurals, steroidal injections, and fluoroscopic work with a C-Arm. (Defs.' 56.1 ¶ 25.) According to Defendants, the procedures performed at the Ambulatory Service Center were minimally invasive outpatient procedures and Dr. Rubin only performed non-invasive procedures. (Defs.' 56.1 ¶¶ 12, 26.) Plaintiff contends that Dr. Rubin performed some procedures, including radiofrequency ablation and procedures involving small incisions, which resulted in blood in the operating room and on the floor. (*Id.*)

---

the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

2

It is undisputed that NYU employs "Unit Support Associates" who are responsible for cleaning operating rooms after each patient. (Pl.'s 56.1 ¶ 17.) Defendants concede, however, that x-ray techs in the main hospital were, at times, asked to clean rooms between patients. (Pl.'s 56.1 ¶ 16.) That said, according to Defendants, Plaintiff was not made to perform any menial task nor did Keyes and Carras ever request Plaintiff to do so.

Conversely, Plaintiff maintains that his supervisors Kelly Keyes and John Carras forced him, and not white x-ray techs, to perform "menial tasks" beyond the scope of his job, such as mopping floors, taking out trash, cleaning operating rooms between patients including cleaning blood and other hazardous waste. (Pl.'s 56.1 ¶¶ 15, 18.) Plaintiff contends that Jeff Kopeck, a white x-ray tech who worked in the Ambulatory Service Center, was not "made to clean up blood off of tables, put out the garbage or otherwise clean up operating rooms after patient use." (*Id.* ¶ 22.)

In March 2018, Plaintiff took a leave of absence. (Defs.' 56.1 ¶ 28.) When Plaintiff returned to NYU in May 2018, he met with Human Resources representative, Rhoda Calvacante, to request a full-time position in the Ambulatory Service Center. (*Id.* ¶¶ 29–30; Pl.'s 56.1 ¶ 22.) Plaintiff followed up on his request via email on May 15, 2018. (Defs.' 56.1, ¶ 30.) According to Plaintiff, he also emailed Regine Mathelier, one of Valerie's supervisors, regarding his interest in a full-time position at the Ambulatory Service Center. (*Id.* ¶ 21.) Defendants assert that when Plaintiff returned to work in May 2018, his license had expired. (*Id.* ¶ 31; Pl.'s 56.1 ¶ 23.) Plaintiff maintains that his license was current, but that he did not possess a physical copy of the license when Defendants requested it. (Pl.'s 56.1 ¶ 23.) In any event, on May 30, 2018, Plaintiff provided Defendants with a copy of his then-current x-ray tech license. (Pl.'s 56.1 ¶ 24.)

3

In June 2018, a full-time x-ray tech position became available at the main hospital location. (Defs.' 56.1 ¶ 33.) On June 18, 2018, Doris McKeon, Administrative Manager of Radiology, sent an email to all x-ray techs requesting that any full-time x-ray tech interested in the position to apply no later than June 25, 2018. (*Id.* ¶ 34.) Three full-time x-ray techs, including Danielle Marini, a white woman, responded to the email expressing an interest. (*Id.* ¶ 36.) Plaintiff also applied for the position. (Pl.'s 56.1 ¶ 25.). Defendants offered the position to Danielle Marini. (*Id.* ¶ 27, 37.)

In the summer of 2018, NYU sought to transfer Plaintiff to the main hospital to receive training that would enable him to work at both the main hospital and the Ambulatory Service Center. (*Id.* ¶ 38.) However, Plaintiff informed Dr. Rubin that he wished to remain at the Ambulatory Service Center. (*Id.* ¶ 39.) In turn, Dr. Rubin and Dr. Brian Snyder requested that Plaintiff stay at the Ambulatory Service Center to continue assisting with their procedures. (*Id.* ¶ 40.) Plaintiff was not transferred to the main hospital at that time. (*Id.* ¶ 41.) On September 10, 2018, Plaintiff requested to revise his schedule to begin work at 9:00 a.m. on Tuesdays, Wednesdays, and Fridays. (*Id.* ¶ 42.) Plaintiff's request to change his schedule was granted. (*Id.* ¶ 44.) Sometime after Plaintiff's schedule change, over Plaintiff's objection, Defendants transferred Plaintiff to the main hospital. (*Id.* ¶ 45–46.)

On October 5, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights alleging unlawful discriminatory practice based on race. (Defs.' 56.1 ¶ 47.) NYU received a copy of the charge on October 16, 2018. (*Id.* ¶ 48.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

4

dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION[3]

### I. Plaintiff's Racial Discrimination Claim

A race discrimination claim under Section 1981 and NYSHRL is analyzed using the *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 (1973) burden-shifting framework. *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Section 1981); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL). Under this framework, to establish a prima facie case of

---

[3] Plaintiff indicates that his failure to promote and retaliation claims are "not contested" and does not provide argument in opposition to Defendant's motion on these claims. (Pl.'s Opposition to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 73.) As such, the Court deems these claims abandoned and dismisses them accordingly. *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 269 (E.D.N.Y. 2016) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (citations and quotations omitted).

5

discrimination, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491–92.  Once a plaintiff establishes a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* at 492.  If the defendants are able to do so, the burden shifts back to the plaintiff to show that the reason offered by the defendants is a mere pretext for discrimination.  *Id.*  To create a material issue of fact and defeat a motion for summary judgment, however, a plaintiff is required to produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendants were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

### A.    Inference of Discrimination

A plaintiff may establish racial discrimination in one of two ways.  First, a plaintiff may proffer direct evidence of discriminatory intent, such as disparaging comments regarding a plaintiff's protected class.  *See Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984).  Second, a plaintiff may rely on indirect evidence of racial discrimination, by establishing that he was treated less favorably than a similarly situated employee outside his protected group.  *Ruiz*, 609 F.3d at 493.  Here, Plaintiff does not adduce any direct evidence of discrimination.  Instead, Plaintiff relies on indirect evidence to support his claim.  Plaintiff's claim in this regard rests on the contention that similarly situated comparators were treated more favorably.  Defendants argue that Plaintiff fails to meet his burden of proof.  The Court agrees.

6

To raise an inference of discrimination by reference to comparators outside his protected class, a plaintiff must establish that he "was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quotation marks and citation omitted). The Second Circuit has instructed that what constitutes "in all material respects" varies from case to case, and a court may consider factors such as whether the plaintiff and the comparator were subject to the same workplace standards, held the same position, or reported to the same supervisor. *See, e.g.*, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (observing that "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards" in order to be similar "in all material respects"). In other words, "the plaintiff and comparators must bear a reasonably close resemblance, but need not be identical." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks and citation omitted). Plaintiff has identified Jeff Kopeck, a white male x-ray tech, as an individual with whom he is similarly situated. (Pl.'s Opp'n at 7.) This is sufficient on the facts of this case to deem Kopeck an appropriate comparator. That said, Plaintiff fails utterly to adduce evidence sufficient to show that he was treated less favorably than Mr. Kopeck (or any other similarly situated employee outside of Plaintiff's protected class for that matter).

Plaintiff maintains that he was required to perform "menial tasks" such as mopping floors, taking out trash, and cleaning blood and other hazardous waste in operating rooms. (Pl.'s 56.1 ¶ 14–15.) Conspicuously absent from the record is any testimony from a witness with first-hand knowledge of the tasks assigned to other x-ray techs. For example, Plaintiff adduced no deposition testimony from Mr. Kopeck regarding the scope of Mr. Kopeck's duties. Likewise,

7

no supervisor testified that they assigned Mr. Kopeck or other x-ray techs menial tasks. Instead, Plaintiff relies exclusively on his own deposition testimony as evidence that Mr. Kopeck and other white x-ray techs were not required to perform the purportedly "menial tasks." (Pl.'s Opp'n. at 7.) In addition to Kopeck, Plaintiff argues that he recalls two other x-ray techs who worked at the Ambulatory Services Center but were not asked to perform the same menial tasks. (*Id.* at 8.) Once again, Plaintiff fails to point the Court to any evidence that shows these two x-ray techs were not asked to do the same work. Plaintiff's bald contention that he was "fully aware of the duties his similarly situated colleagues were tasked with" is not enough to establish personal knowledge. (Defs.' Reply 56.1 ¶ 19.) Indeed, Plaintiff admits that he "did not perform or assist with procedures at the same time as or in the same room as the other x-ray tech." (*Id.*) Plaintiff failed to produce any evidence other than self-serving statements, which proves fatal.

Plaintiff simply lacks the requisite knowledge to attest to whether Mr. Kopeck or any other employee[4] was asked to perform menial tasks. *See Watson v. Richmond Univ. Med. Ctr.*, 408 F. Supp. 3d 249, 265 (E.D.N.Y. 2019) (finding plaintiff's testimony insufficient where she had limited interaction with comparators and provided little evidence beyond her own testimony.) As such, the record is devoid of evidence to establish an inference of discrimination and, therefore, Plaintiff cannot maintain his cause of action. For this reason alone, Plaintiff's racial discrimination claim is ripe for dismissal. *See Shumway*, 118 F.3d at 64–65 (affirming summary judgment where the plaintiff failed to identify a similarly-situated individual who was treated less favorably); *see also Johnson v. Riverhead Cent. Sch. Dist.*, 420 F. Supp. 3d 14, 24 (E.D.N.Y. 2018) ("Because Plaintiff has failed to proffer comparators to demonstrate the

---

[4] In addition to Kopeck, Plaintiff argues that he recalls two other x-ray techs who worked at the Ambulatory Services Center but were not asked to perform the same menial tasks. (Pl.'s Opp'n at 8.) Once again, Plaintiff fails to point the Court to any evidence that shows these two x-ray techs were not asked to do the same work.

8

requisite inference of racial discrimination, Plaintiff's § 1981 and Title VII claims must be dismissed.").

## II.     Plaintiff's Hostile Work Environment Claim

To survive summary judgment for a race-based employment discrimination claim based on a hostile work environment, "a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000).[5]  In short, "the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment[.]" *See Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (citation omitted).  Plaintiff fails to make such a showing.

It is true that in *Watson v. Richmond Univ. Med. Ctr.,* this Court determined that under certain circumstances, the assignment of menial tasks could constitute a hostile work environment.  408 F. Supp. 3d 249, 267 (E.D.N.Y. 2019).  In that case, an African American medical doctor working as a research fellow was consistently directed to take out the garbage, clean off her supervisor's desk, file her supervisor's mail, rearrange bookshelves, bookcases, journals and books, haul nitrogen tanks, and clean out the refrigerator.  *Id.* at 259.  The Court did not find, nor does the Court find here, that the alleged facts are sufficiently severe to support a hostile work environment claim.  It was the continual nature of that conduct (i.e., the pervasiveness of that conduct), that drove the Court's determination.

---

[5] The standard for a hostile work environment claim is the same for the NYSHRL claim as it is for the Section 1981 claim.  *Bermudez c. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011).

9

Here, Plaintiff has failed to identify any evidence that the conduct at issue went beyond isolated incidents. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (finding that "isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment"). Plaintiff asserts that he has "detailed" in more than one instance "the humiliation that performing menial tasks subjected him to in the workplace." (Pl.'s Opp'n at 11.) Even so, there's no evidence that it was pervasive. In fact, this Court has no way of knowing, whether these requests, were only sporadic in nature. "Incidents that are 'few in number' and that occur 'over a short period of time' may fail to demonstrate a hostile work environment." *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 227 (2d Cir. 2004). Plaintiff failed to adduce the requisite evidence to establish that the alleged conduct was pervasive enough to create a hostile work environment.

Even if Plaintiff had surmounted the burden of demonstrating the conduct was sufficiently severe or pervasive, Plaintiff failed altogether to suggest that any performance of menial tasks was based on race. For the same reasons set forth with respect to an inference of discrimination, Plaintiff has failed to meet his burden and cannot point to evidence creating a genuine dispute of fact as to whether Defendants created a hostile work environment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in its entirety.

SO ORDERED.

Dated: Brooklyn, New York  
      March 29, 2024

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge